UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GUSTAVO ALVIZAR,

    Petitioner,

v.

STATE OF NEVADA, *et al.*,

    Respondents.

Case No. 3:18-cv-00425-HDM-CLB

ORDER

I.    <u>Introduction</u>

    This action is a *pro se* petition for writ of habeas corpus by Nevada prisoner Gustavo Alvizar. The action is before the Court for adjudication of the merits of Alvizar's claims. The Court will deny Alvizar's petition, will deny him a certificate of appealability, and will direct the Clerk of the Court to enter judgment accordingly.

II.    <u>Background</u>

    On May 22, 2013, a grand jury in Nevada's Second Judicial District Court, Washoe County, issued an indictment charging Alvizar with open murder with the use of a firearm and attempted murder with the use of a firearm. *See* Indictment, Exh. 3 (ECF No. 11-3). On November 1, 2013, Alvizar entered a plea agreement with the State and pled guilty to one count of second-degree murder. *See* Guilty Plea Memorandum, Exh. 19 (ECF No. 11-19); Transcript of Proceedings, November 1, 2013, Exh. 21 (ECF No. 11-21). On January 14, 2014, Alvizar was sentenced to life in prison with the possibility of parole after ten years. *See* Transcript of Sentencing, Exh. 28 (ECF No. 11-28). The judgment of conviction was entered the same day. *See* Judgment of Conviction, Exh. 27 (ECF No. 11-27).

1    Alvizar filed a notice of appeal on April 8, 2014. *See* Notice of Appeal, Exh. 29

2  (ECF No. 11-29). On July 23, 2014, the Nevada Supreme Court dismissed the appeal

3  as untimely. *See* Order Dismissing Appeal, Exh. 37 (ECF No. 12-7).

4    Alvizar filed a petition for writ of habeas corpus in the state district court on

5  July 21, 2014. *See* Petition for Writ of Habeas Corpus, Exh. 35 (ECF No. 12-5). Counsel

6  was appointed, and with counsel Alvizar filed a supplemental habeas petition on

7  February 11, 2015. *See* Supplemental Petition for Writ of Habeas Corpus, Exh. 55 (ECF

8  No. 12-25). The state district court held an evidentiary hearing on October 24, 2016.

9  *See* Transcript of Evidentiary Hearing, Exh. 65 (ECF No. 13-5). The state district court

10  denied Alvizar's petition on February 6, 2017. *See* Order Denying Petition and

11  Supplemental Petition, Exh. 66 (ECF No. 13-6). Alvizar appealed, and the Nevada

12  Court of Appeals affirmed on April 11, 2018. *See* Order of Affirmance, Exh. 86 (ECF No.

13  13-26).

14    This Court received Alvizar's *pro se* federal habeas corpus petition for filing,

15  initiating this action, on August 31, 2018 (ECF No. 4). Alvizar's petition includes the

16  following claims:

17  
18   Ground 1:  Alvizar's federal constitutional rights were violated as a result
    of ineffective assistance of counsel because his trial counsel did not
    properly advise him regarding the possibility of an appeal and did not file a
19   notice of appeal on his behalf. *See* Petition for Writ of Habeas Corpus
    (ECF No. 4), pp. 3–4.

20   Ground 2: Alvizar's federal constitutional rights were violated as a result of
    ineffective assistance of counsel because his trial counsel failed to
21   adequately investigate his case before he pled guilty. *See id.* at 5–6, 10.

22   Ground 3: Alvizar's federal constitutional rights were violated as a result of
    ineffective assistance of counsel because his trial counsel had a conflict of
23   interest with respect to Alvizar's request to withdraw his guilty plea,
    because his trial counsel did not secure appointment of separate counsel
24   with respect to his request to withdraw his guilty plea, because his trial
    counsel did not properly advise him with respect to his request to withdraw
25   his guilty plea, and because his trial counsel did not challenge or correct
    the trial court's mischaracterization of the sentence he could receive if he
26   withdrew his guilty plea. *See id.* at 7–8, 11.

27  
28  

2

1    On January 30, 2019, Respondents filed a motion to dismiss (ECF No. 10),

2  contending that part of Ground 3 is unexhausted in state court. The Court denied that

3  motion. *See* Order entered July 1, 2019 (ECF No. 14).

4    Respondents then filed their answer (ECF No. 23) on February 4, 2020, and

5  Alvizar filed a reply (ECF No. 24) on February 28, 2020.

6    On February 28, 2020, Alvizar also filed a motion for appointment of counsel

7  (ECF No. 25), and Respondents filed a motion to strike Alvizar's reply (ECF No. 26).

8  III.   Discussion

9    A.   Standard of Review of Merits of Claims

10    Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a

11  federal court may not grant a petition for a writ of habeas corpus on any claim that was

12  adjudicated on the merits in state court unless the state court decision was contrary to,

13  or involved an unreasonable application of, clearly established federal law as

14  determined by United States Supreme Court precedent, or was based on an

15  unreasonable determination of the facts in light of the evidence presented in the state-

16  court proceeding. 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly

17  established federal law if it either applies a rule that contradicts governing Supreme

18  Court law or reaches a result that differs from the result the Supreme Court reached on

19  "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per

20  curiam). A state-court ruling is "an unreasonable application" of clearly established

21  federal law under section 2254(d) if it correctly identifies the governing legal rule but

22  unreasonably applies the rule to the facts of the case. *See Williams v. Taylor*, 529 U.S.

23  362, 407–08 (2000). To obtain federal habeas relief for such an "unreasonable

24  application," however, a petitioner must show that the state court's application of

25  Supreme Court precedent was "objectively unreasonable." *Id.* at 409–10; *see also*

26  *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Or, in other words, habeas relief is

27  warranted, under the "unreasonable application" clause of section 2254(d), only if the

28  state court's ruling was "so lacking in justification that there was an error well

1  understood and comprehended in existing law beyond any possibility for fairminded

2  disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

3       B.     Standards Governing Claims of Ineffective Assistance of Counsel

4       In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court

5  propounded a two-part test for analysis of claims of ineffective assistance of counsel:

6  the petitioner must demonstrate (1) that the attorney's representation "fell below an

7  objective standard of reasonableness," and (2) that the attorney's deficient performance

8  prejudiced the defendant such that "there is a reasonable probability that, but for

9  counsel's unprofessional errors, the result of the proceeding would have been different."

10  *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of

11  counsel must apply a "strong presumption" that counsel's representation was within the

12  "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden

13  is to show "that counsel made errors so serious that counsel was not functioning as the

14  'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To establish

15  prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the

16  errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.

17  Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial

18  whose result is reliable." *Id*. at 687.

19       Where a state court previously adjudicated a claim of ineffective assistance of

20  counsel under *Strickland*, establishing that the state court's decision was unreasonable

21  is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the Supreme

22  Court instructed:

23       The standards created by *Strickland* and § 2254(d) are both "highly
         deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320,
24       333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply
         in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*, 556 U.S. 111,
25       123 (2009)]. The *Strickland* standard is a general one, so the range of
         reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420.
26       Federal habeas courts must guard against the danger of equating
         unreasonableness under *Strickland* with unreasonableness under
27       § 2254(d). When § 2254(d) applies, the question is not whether counsel's
         actions were reasonable. The question is whether there is any reasonable
28       argument that counsel satisfied *Strickland*'s deferential standard.

4

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.' [*Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam)].").

C.   Ground 1

In Ground 1, Alvizar claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel because his trial counsel did not properly advise him regarding the possibility of an appeal and did not file a notice of appeal on his behalf. *See* Petition for Writ of Habeas Corpus (ECF No. 4), pp. 3–4.

Alvizar asserted this claim in his state habeas action. *See* Supplemental Petition for Writ of Habeas Corpus, Exh. 55, pp. 3–5 (ECF No. 12-25, pp. 4–6). The state district court held an evidentiary hearing, and then denied relief on the claim. *See* Transcript of Evidentiary Hearing, Exh. 65 (ECF No. 13-5); Order Denying Petition and Supplemental Petition, Exh. 66 (ECF No. 13-6). Alvizar appealed and asserted this claim on the appeal. *See* Appellant's Opening Brief, Exh. 78, pp. 18–20 (ECF No. 13-18, pp. 26–28). The Nevada Court of Appeals affirmed the denial of relief on this claim, as follows:

> ... Alvizar claimed defense counsel was ineffective for failing to file a direct appeal and misinforming him as to his right to an appeal. The district court conducted an evidentiary hearing and found Alvizar did not indicate to defense counsel that he wanted to file a direct appeal or otherwise act in a manner giving rise to a duty to file an appeal. We conclude the district court's finding is supported by substantial evidence and is not clearly wrong, Alvizar failed to demonstrate counsel's performance was deficient, and the district court did not err in rejecting this claim. *See Toston v. State*, 127 Nev. 971, 978, 267 P.3d 795, 800 (2011) ("[Defense] counsel has a constitutional duty to file a direct appeal in two circumstances: when requested to do so and when the defendant expresses dissatisfaction with his conviction."); *Means v. State*, 120 Nev. 1001, 1012–13, 103 P.3d 25, 33 (2004) (petitioner bears the burden of proving ineffective assistance).

Order of Affirmance, Exh. 86, p. 2 (ECF No. 13-26, p. 3). This ruling was not unreasonable.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held as

follows:

> We ... hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *See* [*Strickland*, 466 U.S. at 690] (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Flores-Ortega*, 528 U.S. at 480. With respect to the question of prejudice, the *Flores-Ortega* Court stated further: "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

At the evidentiary hearing in state court, Alvizar testified—somewhat ambiguously—that he spoke with his attorney about appealing, and his attorney told him not to worry about it, and that he had a year to initiate the appeal. *See* Transcript of Evidentiary Hearing, Exh. 65, pp. 8–9 (ECF No. 13-5, pp. 9–10) ("I don't remember if it was when I, after I got sentenced or from another, from another charge I caught.").

Alvizar's counsel testified at the evidentiary hearing that he had been practicing law since 1988 and doing criminal defense work since 1998. *Id.* at 46 (ECF No. 13-5, p. 47). He testified further as follows:

> Q.     After or at any point during your representation of Mr. Alvizar did he indicate to you that he wanted to appeal his conviction?
>
> A.     No, not -- well, after the case was over I think I received something, either a letter or maybe it went to the Court, I'm not sure, but it was months after. We were pretty much done. You know, I think he was in prison when that arose, but before then there was no mention of it and,

you know, predictably in a guilty plea unless something goes wrong with sentencing there is not, you know, a lot of appellate [fodder] there.

       Q.     If he had asked you to file an appeal within -- well, what is the deadline to file an appeal?

       A.     The notice of appeal has to be filed within 30 days of the judgment of conviction.

       Q.     Did Mr. Alvizar ever request you to file an appeal within that time frame?

       A.     No.

       Q.     What would you have done if he did?

       A.     Filed a notice of appeal.

       Q.     Did you ever tell him that that time frame was one year?

       A.     One year to file the appeal?

       Q.     Yes, the notice of appeal?

       A.     No. No, I would not say that.

       Q.     Why not?

       A.     Well, that's not true.

*Id.* at 53–54 (ECF No. 13-5, pp. 54–55). The state courts reasonably found that this testimony by Alvizar's counsel's was credible, and that Alvizar did not reasonably demonstrate that he was interested in appealing.

      Furthermore, the evidence showed that there was no reason for Alvizar's counsel to believe that a reasonable defendant in Alvizar's situation would want to appeal. Alvizar's counsel testified, as follows, about his impression of the State's case:

       Q.     Did you look at the discovery provided to you by the prosecutor?

       A.     I did.

       Q.     And what was your sense of the strength of the State's case against Mr. Alvizar?

       A.     It was relatively strong. The identification was good. One of the victims of the shooting survived, so that would have been the State's, you know, star witness and he made a very solid identification of Mr. Alvizar based upon his facial tattoos. There wasn't really much question about what had occurred.

*Id.* at 48 (ECF No. 13-5, p. 49). Alvizar pled guilty to second-degree murder, in exchange for the State stipulating to a sentence of life with the possibility of parole after ten years; the State agreed to drop the charges of open murder with use of a deadly weapon and attempted murder with use of a deadly weapon and agreed not to pursue any firearm or gang enhancement. *See* Guilty Plea Memorandum, Exh. 19 (ECF No. 11-19). In short, by entering the plea agreement Alvizar avoided the possibility of a significantly longer prison sentence, and he was sentenced exactly as contemplated in the plea agreement. *See* Judgment of Conviction, Exh. 27 (ECF No. 11-27). It was, therefore, reasonable for the state courts to find that Alvizar's counsel had no reason to believe that a rational defendant in Alvizar's situation would want to appeal his conviction and risk the possibility of a longer prison sentence if he went to trial.

There is no showing that Alvizar's counsel's performance was unreasonable with respect to the possibility of Alvizar pursuing a direct appeal. The Nevada Court of Appeals' ruling was not contrary to, or an unreasonable application of, *Strickland* or *Flores-Ortega*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny Alvizar habeas corpus relief on Ground 1.

D.   <u>Ground 2</u>

In Ground 2, Alvizar claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel because his trial counsel failed to adequately investigate his case before he pled guilty. *See* Petition for Writ of Habeas Corpus (ECF No. 4), pp. 5–6, 10.

Alvizar asserted this claim in his state habeas action. *See* Supplemental Petition for Writ of Habeas Corpus, Exh. 55, pp. 5–7 (ECF No. 12-25, pp. 6–8). The state district court held an evidentiary hearing, and then denied relief on the claim. *See* Transcript of Evidentiary Hearing, Exh. 65 (ECF No. 13-5); Order Denying Petition and Supplemental Petition, Exh. 66 (ECF No. 13-6). Alvizar appealed and asserted this claim on the

1   appeal. *See* Appellant's Opening Brief, Exh. 78, pp. 21–24 (ECF No. 13-18, pp. 29–32).

2   The Nevada Court of Appeals affirmed the denial of relief on this claim, as follows:

3           ... Alvizar claimed defense counsel was ineffective for failing to
        conduct an adequate investigation. The district court conducted an

4       evidentiary hearing and made the following findings. Alvizar failed to
        allege or prove any facts that an independent investigation would have

5       revealed. He did not identify what prejudice resulted from any failure to
        investigate. And he did not provide defense counsel with any direction that

6       would have given rise to an obligation to conduct an independent
        investigation. We conclude the district court's finding is supported by

7       substantial evidence and is not clearly wrong, Alvizar failed to
        demonstrate counsel's performance was deficient, and the district court

8       did not err in rejecting this claim. *See Means*, 120 Nev. at 1012–13, 103
        P.3d at 33; *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (a

9       petitioner claiming counsel did not conduct an adequate investigation must
        specify what a more thorough investigation would have uncovered).

10

11  Order of Affirmance, Exh. 86, pp. 2–3 (ECF No. 13-26, pp. 3–4). This ruling was not

12  unreasonable.

13          This claim raises the question whether any information that could have been

14  discovered through further investigation "would have led counsel to change his

15  recommendation as to the plea." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*

16  *Lambert v. Blodgett*, 393 F.3d 943, 982 (9th Cir. 2004). This, in turn, depends on

17  whether any information that could have been discovered through investigation would

18  have supported a successful defense. *See id*. The *Strickland* Court instructed:

19          [S]trategic choices made after thorough investigation of law and facts
        relevant to plausible options are virtually unchallengeable; and

20      strategic choices made after less than complete investigation are
        reasonable precisely to the extent that reasonable professional judgments

21      support the limitations on investigation. In other words, counsel has a duty
        to make reasonable investigations or to make a reasonable decision that

22      makes particular investigations unnecessary. In any ineffectiveness case,
        a particular decision not to investigate must be directly assessed for

23      reasonableness in all the circumstances, applying a heavy measure of
        deference to counsel's judgments.

24

25  *Strickland*, 466 U.S. at 691.

26          At the evidentiary hearing, Alvizar's counsel testified that he reviewed the

27  discovery provided by the prosecutor and determined that the State's case was strong

28

1  because one of the two shooting victims survived and identified Alvarez based upon his

2  facial tattoos. Transcript of Evidentiary Hearing, Exh. 65, p. 48 (ECF No. 13-5, p. 49).

3      Asked if Alvizar ever identified any evidence that would support a defense,

4  Alvizar's trial counsel testified as follows:

5          Q.    In your discussions with Mr. Alvizar what, if anything, did he
        ever tell you that would have assisted in some sort of defense against the
6        original charges?

7          A.    What did he tell me?

8          Q.    Did he ever identify something that would support a
        defense?
9
          A.    No. Like an alibi you mean or something like that?
10
          Q.    Sure, anything.
11
          A.    No. I think he -- no, I don't recall anything like that.
12

13  *Id.* at 55 (ECF No. 13-5, p. 56).

14      Alvizar makes no showing that his counsel's investigation was unreasonable, or

15  that any further investigation would have revealed information that could have

16  supported a defense. Alvizar makes no showing that any further investigation would

17  have affected his decision to plead guilty to second-degree murder.

18      Alvizar claims that, if his counsel had conducted further investigation before he

19  pled guilty, he would have discovered that Alvizar has a learning disability. But—putting

20  aside the fact that this is information apparently within Alvizar's knowledge, and

21  investigation was not necessary for its discovery—there is no showing how evidence of

22  a learning disability could have provided support for any defense, or how developing

23  evidence of such would have affected Alvizar's decision to plead guilty to second-

24  degree murder.

25      There is no showing that the Nevada Court of Appeals' ruling on this claim was

26  contrary to, or an unreasonable application of, *Strickland, Hill*, or any other Supreme

27  Court precedent, or that it was based on an unreasonable determination of the facts in

28

light of the evidence presented. The Court will deny Alvizar habeas corpus relief on Ground 2.

E.    Ground 3

In Ground 3, Alvizar claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel because his trial counsel had a conflict of interest with respect to Alvizar's request to withdraw his guilty plea, because his trial counsel did not secure appointment of separate counsel with respect to his request to withdraw his guilty plea, because his trial counsel did not properly advise him with respect to his request to withdraw his guilty plea, and because his trial counsel did not challenge or correct the trial court's mischaracterization of the sentence he could receive if he withdrew his guilty plea. *See* Petition for Writ of Habeas Corpus (ECF No. 4), pp. 7–8, 11.

Alvizar asserted this claim in his state habeas action. *See* Supplemental Petition for Writ of Habeas Corpus, Exh. 55, pp. 7–8 (ECF No. 12-25, pp. 8–9). The state district court held an evidentiary hearing, and then denied relief on the claim. *See* Transcript of Evidentiary Hearing, Exh. 65 (ECF No. 13-5); Order Denying Petition and Supplemental Petition, Exh. 66 (ECF No. 13-6). Alvizar appealed and asserted this claim on the appeal. *See* Appellant's Opening Brief, Exh. 78, pp. 24–26 (ECF No. 13-18, pp. 32–34). The Nevada Court of Appeals affirmed the denial of relief on this claim, as follows:

> ... Alvizar claimed defense counsel was ineffective for failing to ensure conflict-free counsel was appointed during the status hearing to consider his request to withdraw his guilty plea. The district court conducted an evidentiary hearing and made the following findings. Alvizar failed to identify any facts that gave rise to an actual conflict with his defense counsel. If Alvizar had chosen to proceed with a motion to withdraw his guilty plea, the district court would have appointed independent counsel for the purposes of an evidentiary hearing. Alvizar chose not to attempt to withdraw his guilty plea; therefore, the appointment of independent counsel was not warranted. We conclude the district court's finding is supported by substantial evidence and is not clearly wrong. Alvizar failed to demonstrate counsel's performance was deficient, and the district court did not err in rejecting this claim. *See Means*, 120 Nev., at 1012–13, 103 P.3d at 33; *Hargrove v. State*, 100 Nev. 498, 502–08, 686 P.2d 222, 225 (1984) (a petitioner is not entitled to postconviction relief if his claims are repelled by the record).

1  Order of Affirmance, Exh. 86, p. 3 (ECF No. 13-26, p. 4). This ruling was not
2  unreasonable.

3     After he pled guilty to second-degree murder, but before he was sentenced,
4  Alvizar indicated that he wanted to withdraw his plea, and the trial court held a hearing
5  regarding that request on December 17, 2013. *See* Inmate Request Form, Exh. 24
6  (ECF No. 11-24); Transcript of Status Hearing, Exh. 25 (ECF No. 11-25). At the hearing,
7  Alvizar withdrew his request to withdraw his guilty plea. *See* Transcript of Status
8  Hearing, Exh. 25, p. 30 (ECF No. 11-25, p. 31). As the Court understands Alvizar's
9  claim, it is that, if not for ineffective assistance of his counsel, Alvizar would have
10 persisted with a motion to withdraw his plea.

11    Alvizar first claims that his attempt to withdraw his plea gave rise to a conflict with
12 his counsel, and his counsel was ineffective for not informing the trial court of the
13 conflict and seeking appointment of independent counsel for Alvizar. This part of
14 Ground 3, though, is belied by the record. At the December 17, 2013 hearing, Alvizar's
15 counsel pointed out his disagreement with Alvizar. *See* Transcript of Status Hearing,
16 Exh. 25, p. 4 (ECF No. 11-25, p. 5) ("And my position was I was not going to be
17 adopting his so-called motion to withdraw his plea. And I, of course, deny that I
18 rendered ineffective assistance to him in this process."); *see also id.* at 8 (ECF No. 11-
19 25, p. 9) ("Perhaps my motion to withdraw might be appropriate, but --"). The court
20 indicated that if Alvizar sought to withdraw his plea, independent counsel would be
21 appointed. *See id.* at 10 (ECF No. 11-25, p. 11) ("If you want a formal evidentiary
22 hearing, we'll bring Judge Stiglich in, you know. I would probably have to get another
23 lawyer involved, and he can make a record of this. But there has to be something
24 extraordinary to allow you to withdraw your plea."). Alvizar then stated that is not what
25 he wanted to do, and he abandoned his motion to withdraw his plea. *Id.* at 10–13, 31
26 (ECF No. 11-25, pp. 11–14, 32).

27    Alvizar also claims that during the course of the December 17, 2013 hearing, the
28 judge mischaracterized the sentence he could receive if he withdrew his guilty plea and

went to trial and was convicted, and his counsel was ineffective for not challenging or correcting the judge's mischaracterization. However, the transcript of the hearing reveals that this claim is meritless. It is plain from a reading of the transcript that the judge was not advising Alvizar of what exactly his sentence would be if he went to trial and was convicted, but, rather, was simply making the point that in that case his sentence could be substantially greater than the sentence agreed upon in the plea agreement. *See*, *e.g.*, *id.* at 9–10 (ECF No. 11-13, pp 10–11).  It is plain that counsel performed reasonably in not challenging or correcting the judge's statements.

And, at any rate, Alvizar cannot show that he was prejudiced by his counsel not challenging or correcting the judge's comments about the sentence he could receive if he went to trial and was convicted. The point was that, under the plea agreement, the State agreed to a sentence of life with the possibility of parole after ten years, but if Alvizar went to trial he could receive a much longer sentence, Alvizar understood that, and he decided not to seek to withdraw his plea. *See* Transcript of Evidentiary Hearing, Exh. 65, pp. 18–20, 31, 36, 43–45 (ECF No. 13-5, pp. 19–21, 32, 37, 44–46) (Alvizar testified that he decided not to seek to withdraw his guilty plea because he was concerned about the sentence he could receive if he withdrew his guilty plea and went to trial).

Alvizar does not show that his counsel performed unreasonably with respect to Alvizar's motion to withdraw his guilty plea, or that Alvizar was prejudiced. The Nevada Court of Appeals' ruling on this claim was not contrary to, or an unreasonable application of, *Strickland*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny Alvizar habeas corpus relief on Ground 3.

F.   Motions

On February 28, 2020, the same day that Alvizar filed his reply to Respondents' answer, Alvizar also filed a motion for appointment of counsel (ECF No. 25). Respondents did not respond to that motion. The Court has twice before denied

Alvizar's motions for appointment of counsel. *See* Order entered September 24, 2018 (ECF No. 7); Order entered August 9, 2019 (ECF No. 16). "Indigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations." *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) (citing *Kreiling v. Field*, 431 F.2d 638, 640 (9th Cir. 1970) (per curiam)). The court may, however, appoint counsel at any stage of the proceedings "if the interests of justice so require." *See* 18 U.S.C. § 3006A; *see also* Rule 8(c), Rules Governing § 2254 Cases; *Chaney*, 801 F.2d at 1196. The Court determines that, under the circumstances of this case, appointed counsel is not necessary to prevent a due process violation. The Court will deny Alvizar's further motion for appointment for appointment of counsel.

Also, on February 28, 2020, Respondents filed a motion to strike (ECF No. 26), requesting that the Court strike Alvizar's reply. Respondents point out that the reply is not properly signed by Alvizar. Taking into consideration that Alvizar appears *pro se*, and in the interest of entertaining all arguments by Alvizar in support of his claims, the Court will deny Respondents' motion to strike. The Court has considered the arguments in Alvizar's reply.

G.   Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying the standard articulated in *Slack*, the Court finds that a certificate of appealability is unwarranted. The Court will deny Alvizar a certificate of appealability.

This, however, does not preclude an appeal by Alvizar. Alvizar can seek to appeal by filing a timely notice of appeal in this action and seeking a certificate of appealability from the Ninth Circuit Court of Appeals.

IV.   Conclusion

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Appointment of Counsel (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents' Motion to Strike (ECF No. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

DATED THIS 29th day of _____ June _____, 2020.

Howard D McKibben

HOWARD D. McKIBBEN,
UNITED STATES DISTRICT JUDGE